**Cooper License**

*Gerald Dolphin*, for appellant.

*Peter P. Jurchak*, Special Deputy Attorney General, for Pennsylvania Liquor Control Board.

ROBINSON, J., September 13, 1948.—This is an appeal from the action of the Pennsylvania Liquor Control Board imposing "a penalty equivalent to a forty-five (45) day suspension" of appellants' liquor license issued for the premises at 517 Adams Avenue in the City of Scranton. The order was based on findings that liquor was sold to visibly intoxicated persons and that dancing was "permitted" on the premises without a special permit: Act of May 21, 1943, P. L. 332, sec. 1.

The order, itself, is subject to question. Under section 410 of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762 (twice amended in 1943, April 16, P. L. 60, sec. 1; May 27, 1943, P. L. 688, sec. 1; 47 PS §744-410), the board, upon findings of violations, is empowered to suspend or revoke a liquor license and thereafter where a suspension is ordered, may accept money from the licensee by way of an offer in compromise. The order here imposed was in effect an imposition of a fine. We are referred to no authority which warrants the Pennsylvania Liquor Control Board in drawing the kind of order issued in this case.

We, first, dispose of the objection to the testimony of Enforcement Officer Marks. This officer twice visited the licensed premises on the evening of August 27, 1947, remaining the second time until closing hours the next morning. After each visit he made notes in his automobile as to what he saw and heard in the taproom. He was accompanied by a female, not connected with the law enforcement staff, and admitted to drinking six servings of whiskey and some beer during the course of the evening. Leaving the licensed premises, Officer Marks drove to Wilkes-Barre, left his companion at her home, and then went to his hotel

where he "wrote down the testimony". He then threw away the original memoranda.

In court this witness could do little more than read the "testimony" he had written out in his hotel room stating that it was impossible to testify without reading the notes. When a witness has no present recollection of past events and his memory is not refreshed by notes or memoranda, the notes themselves may be admitted as a record of a past recollection.

In Christian Moerlein Brewing Co. v. Rusch, 272 Pa. 181, at 187, the rule as to the admissibility of this kind of evidence was stated as follows:

"Where a witness has a present recollection of a past event, although his memory is refreshed by a memorandum made at the time of the event, he testifies from such recollection; but where he has no present recollection of such past event, even when aided by his memorandum, the latter itself may be offered in evidence, on proof by the witness of his knowledge of its accuracy when made and that it was made when the transaction was fresh in his mind. This is in terms the past recollection of the witness and is admissible in evidence under the great weight of authority."

This clearly sets forth the general rule of law as it is almost universally understood. The development of the law in this State and a collection of Pennsylvania authorities is to be found in 3 Wigmore on Evidence, 3rd ed., sec. 736. The general rule, however, requires that the original memoranda be produced or the absence satisfactorily explained.

"While the witness' verification of its correctness may be accepted, the law may well insist on the production of the original paper, not merely as verifying the fact of its existence, but also as corroborating the correctness of his story, as throwing additional light on his veracity, as affording a means of testing him, and as the best proof of what was really recorded": 3 Wigmore on Evidence, 3rd ed., sec. 749.

The evidence we now deal with was not used to refresh the recollection of the witness for it failed to stimulate his mind to that extent. Neither is it admissible as a matter of a past recollection which had been recorded, because the original notes were thrown away and no copies are available. The writings amount to nothing more than a deliberate preparation of statements solely for the purpose of reciting them in court and they were prepared under such circumstances as to excite doubt as to their accuracy and trustworthiness.

In a case presenting a factual situation similar to that here considered, it was said by the United States Circuit Court in United States v. Jewett, 15 F. (2d) 955 (C. C. A. 9), rejecting the memoranda there offered, as follows (p. 956):

"It would be possible for a corrupt witness to withhold the original memorandum and use notes purporting to be copies, fixed up in such way as to make a much more favorable showing than that made by the original; the opposing party would be powerless to protect himself against such false showing."

Here, the original memoranda being destroyed or discarded, we are asked to admit in evidence the substance of a writing prepared from original notes at a time when its author had partaken of strong alcoholic liquors in quantities not calculated to make alert his mind and memory. We are not impressed with the witness' assertions that he could write out the "testimony" even after drinking 60 glasses of whiskey. This evidence does not possess the character of accuracy and trustworthiness that courts require to qualify the same for admission. The testimony of Officer Marks as to events on the evening of August 27, 1947, and the morning following, is stricken out.

The testimony on behalf of the Liquor Control Board followed the usual pattern. The licensed premises were placed under investigation and visits were made on

different occasions by the officers of the enforcement staff. The manner in which the business of the establishment was conducted was observed.

From the competent testimony 11 different patrons of the bar were, in the opinion of the officers, visibly intoxicated. Those opinions were formed on the observations of the patrons' conduct. They were described as persons who, "were unsteady" on their feet, "staggered" in their walk, talked loudly, sang, were "thick of speech", slapped other patrons on the back, and one spilled his drinks on himself. Of the 11 persons described, there is no evidence that four of them were served, sold or furnished drinks by the licensees or their agent.

Five patrons of the taproom described by the officers were called by appellant. In each instance these witnesses testified to their presence at the premises during the time fixed by the officers, explained their conduct, testified as to the number of drinks they had, and denied that they were intoxicated visibly or in any other manner. These witnesses did not appear at the hearing held by the examiner.

Thus, the opinions of lay witnesses as to the intoxication of certain individuals is contradicted by the direct denials and explanations of the individuals themselves. As these witnesses are, in law, not interested in the outcome of the litigation their testimony is entitled to great weight and consideration. The case, in this respect, differs from the facts before the court in Turner v. Pennsylvania Liquor Control Board, 161 Pa. Superior Ct. 16.

We, therefore, do not find, from the evidence, that the licensees, their agents, servants and employes, sold, gave or furnished liquor to intoxicated persons.

We agree with the finding of the board that dancing was permitted on the premises without first procuring the required permit. While the evidence on this score

does not describe the nature of the dancing by the patrons, does not state the length of time such dancing took place, and does not inform us that dancing occurred in the presence of the licensees, or their employes, it is inconceivable that the events could have occurred the number of times testified to by the officers without coming to the attention of appellants. This testimony stands uncontradicted by appellants and the record contains no evidence of any effort by the licensed owners, or their employes, to curb the unpermitted acts. The natural and logical conclusion therefore, is that such dancing took place with the knowledge, consent and permission of appellants: Easton's Liquor License Case, 142 Pa. Superior Ct. 49.

Where the court of quarter sessions on an appeal from the action of the Liquor Control Board in suspending a license makes findings of facts substantially different from those of the board it may reverse or modify the board's action: Mami's Liquor License, 144 Pa. Superior Ct. 285; Re. Pacewicz Liquor License Case, 152 Pa. Superior Ct. 123; Lehigh Valley Assn. Liquor License, 154 Pa. Superior Ct. 141; Andracchio Appeal, 160 Pa. Superior Ct. 74.

Accordingly, September 13, 1948, the order of the Pennsylvania Liquor Control Board dated June 11, 1948, imposing on appellants a penalty equivalent to a 45-day suspension of their liquor license is reversed and it is ordered and decreed that the liquor license issued to Herbert S. Cooper and Madlyn B. Cooper for the premises at 517 Adams Avenue in the City of Scranton and County of Lackawanna be, and the same is hereby, suspended for a period of 10 days with authority in the Pennsylvania Liquor Control Board to accept an offer in compromise as a penalty in lieu of such suspension as provided for in section 410 of the Liquor Control Act. This order is to be effective 15 days from the date hereof.